SAFEWAY STORES, INC. *v.* INGRAM.

4-2619

Opinion delivered July 4, 1932.

*Rose, Hemingway, Cantrell & Loughborough,* for appellant.

*Sam T.* and *Tom Poe* and *George W. Clark,* for appellee.

McHANEY, J.   Appellee sued appellant for damages, and in his complaint alleged that on the 22nd day of November, 1930, he purchased from appellant a piece of cheese loaf to be used and consumed as food; he ate a portion thereof and immediately thereafter became violently ill, sick at his stomach, causing a continuous emission therefrom for more that 12 hours, accompanied by a high temperature, followed by nervousness and nervous rigors; and since that time he has been unable to retain any substantial food in his stomach, but has been forced to exist on a very restricted diet; that said cheese loaf was unfit for human consumption, was poison and caused him to be stricken with ptomaine poison; that the servant of appellant knew said food was unwholesome, and that he was buying same for food, and that he relied upon the recommendation of said servant that said food was wholesome and nutritious. Appellant denied all the allegations of the complaint.  A trial resulted in a verdict and judgment for appellee against appellant in the sum of $3,000.

For a reversal of the judgment appellant first argues that the court erred in giving instructions 2 and 5 at the request of appellee for the reason, it is urged, that the action was based upon a breach of implied warranty that the food sold was fit for consumption, whereas the two instructions mentioned defined the duty of appellant to exercise ordinary care in the sale of food for human consumption to see that the food they sell is reasonably fit for the purpose for which it is intended, and that, if appellant's employee knew, or, by the exercise

of ordinary care, could have known, that the cheese loaf sold was unfit for human consumption, defendant would be liable. It is said that these two instructions are at least confusing to the jury, as instructions 1 and 3 given at appellee's request are based on the theory of implied warranty, and that it permitted appellee to recover on a theory not alleged in the complaint. Only a general objection was made to instructions 2 and 5, and the objection now argued is not raised by a general objection. The instructions complained of were correct declarations of law, were not inherently wrong, and a general objection fails to raise the question now argued. This court has held that the retail dealer of food for immediate consumption may be liable for damages both for a breach of implied warranty and for negligence in failing to use ordinary care. *Heinemann* v. *Barfield*, 136 Ark. 456, 207 S. W. 58. Therefore the rule relating to breach of implied warranty does not relieve appellant from the exercise of ordinary care.

Complaint is also made to instruction No. 9. This instruction told the jury, in substance, that, if appellee was suffering with stomach trouble at the time he ate the cheese loaf, but the unwholesome cheese loaf aggravated or accentuated his condition, causing him to suffer the disorder from which he complains, if any, still appellant would be liable. In other words, even though appellee might be sick, or his stomach in poor condition, appellant would have no right to sell him unwholesome food causing him to suffer ptomaine poisoning. We think no prejudice resulted to appellant in this regard. It defended on the ground, first, that the cheese loaf was pure and wholesome, and, 2d, that any illness suffered by appellee was caused by a prior condition of his stomach. No specific objection was made to this instruction, and we think it correctly states the law applicable to the facts in this case. Appellant would have no right to sell even a sick man poisoned food. See *St.*

*L. I. M. & S. R. Co.* v. *Steel,* 129 Ark. 520, 197 S. W. 288, for similar rule. Moreover, the court instructed the jury in No. 3 given at appellant's request, that if they believed from the evidence appellee suffered with a stomach trouble at the time he bought the cheese loaf; that same was pure and wholesome; and that the trouble he suffered after eating it was due to his then condition and not to the unwholesomeness of the food, the verdict should be for appellant. We are therefore of the opinion no error was committed in this regard.

It is next urged that the testimony of Dr. Ponder, an expert witness for appellee, was incompetent. Dr. Ponder sat in the court room, heard appellee and Dr. Harrod, his physician, testify concerning his symptoms and was asked to state whether or not in his opinion appellee's condition as testified to by him and Dr. Harrod could be attributed to food poisoning. He answered that it could. It is said this was error, and that to permit the witness to base his opinion upon the testimony of Dr. Harrod would deprive it of the right of pointing out such parts of Dr. Harrod's testimony as would be improper in a hypothetical question. No objection was made to any part of Dr. Harrod's testimony. There was no conflict in the testimony at the time Dr. Ponder testified. We are therefore of the opinion that this point is ruled adversely to appellant by the decision of this court in the recent case of *Arkansas Baking Co.* v. *Wyman, ante* p. 310.

The next assignment of error is that the court erred in giving at appellee's request instruction No. 5-A, which reads as follows: ''The court instructs you, notwithstanding evidence may have been offered seeking to impeach the testimony of the plaintiff, yet, notwithstanding such impeaching evidence, the jury are the sole and exclusive judges of the weight and credibility of all the witnesses who have testified in this case.'' It is said that this is an instruction upon the weight of the evidence and unnecessarily stresses the fact that the jury could

disregard the impeaching evidence. Appellant introduced a number of witnesses who testified that appellee's reputation for truth and morality was bad, and some of them said they would not believe him on oath on a matter in which he was interested. We do not think this instruction amounts to a comment on the weight of the evidence, and, while it mentions the fact that impeaching evidence had been introduced, the concluding part of the instruction is that "the weight and credibility of all the witnesses who have testified in the case" was for their exclusive determination. This is not a comment upon the weight of the testimony, nor do we think it emphasizes any particular testimony, as it applied to all the witnesses in the case. Cases cited by appellant holding that it is error for the trial court to emphasize any particular testimony do not apply.

It is finally insisted that the verdict is excessive and that the amount thereof resulted from certain improper remarks made by counsel for appellee, who stated that it was possible that an insurance company might have protected appellant against loss in this case. Objection was made to the language, which the court sustained and specifically instructed the jury to disregard it. In addition counsel himself withdrew the remarks. It is admitted this cured whatever error might have been committed in this regard, but that such statement, when taken in connection with the evidence of pain and suffering and loss of time, caused the jury to render a larger verdict than it might have otherwise been. We cannot agree with appellant in this regard. While the evidence is unsatisfactory and was in sharp conflict, we have reached the conclusion that there is substantial evidence to support the verdict which is not clearly excessive, and that the judgment must be affirmed. It is so ordered.