Safeway Stores, Inc. *v.* Phelps.

4-6119 145 S. W. 2d 337

Opinion delivered December 9, 1940.

*G. C. Ledbetter* and *Bridges, Bridges & Young,* for appellant.

*Switzer & Campbell,* for appellee.

HUMPHREYS, J. This suit was brought by appellee against appellant in the circuit court of Ashley county to recover damages in the sum of $2,999 on account of an injury he claims to have received to his back by slipping on a small quantity of oil negligently spilled and left on the floor at or near the place he was employed to work in a little room in the northwest corner of its business house in Crossett, Arkansas. An answer was filed by appellant denying the material allegations of the complaint and specifically pleading contributory negligence and assumption of risk as separate, distinct and complete defenses to the alleged cause of action.

The cause was submitted to the jury upon the pleadings, evidence introduced and instructions of the court resulting in a verdict and consequent judgment in favor of appellee for $1,500, from which is this appeal.

At the conclusion of the testimony introduced by appellee and again at the conclusion of all the testimony, appellant requested peremptory instructions in its favor, each of which was overruled by the court, over appellant's objections and exceptions.

Appellant's first contention for the reversal of the judgment is that the evidence introduced by appellee as to the alleged negligence of appellant was insufficient to take the case to the jury, and that the court erred in overruling its motions for an instructed verdict.

It was stipulated that appellant was a foreign corporation organized under the laws of the state of Nevada and authorized to do business in the state of Arkansas.

Appellee's testimony was the only evidence introduced in support of his allegation of negligence on the part of appellant and, when viewed in the most favorable light to him, is, in substance, as follows:

Appellee was a market manager for appellant in Russellville and had been connected with the meat market business for about thirty-two years and had worked for appellant and its affiliates in Arkansas between four and five years. He was forty-five years old and had been drawing a salary at Russellville of $27.50 per week. In August, 1938, appellant put in a branch store in Crossett, Arkansas. It was a general store and H. C. Vincent was the general manager thereof and appellee was sent from the Russellville store at an increased salary to $30 per week to manage the meat market department in same, but he and all the other employees were under the control and direction of H. C. Vincent. Vincent carried the key to the front door and to the inside door, and he and the truck drivers who hauled goods from the main distribution store in Little Rock to the Crossett branch store had keys to the back door opening out of the little room into the alley. The main store was a large building and the front part of it was used for the sale of the general stock of groceries, and the meat department was on one side of the store and there was a room in the northwest corner of the store about twenty feet by twenty feet. This small room was used as the night delivery or store room for goods brought from Little Rock. The goods were unloaded in the alley through the back door of this small room and placed around in the small room from time to time. The deliveries were generally at night. The small room was cut off from the large room or the store room proper by two-inch mesh chicken wire fastened at the bottom to a two by four and on studding which ran up to the ceiling. There was a wire door into the store proper from the night delivery store room, and the custom was for the employees, including appellee, to go to this store room and select goods for sale in the various departments. This small room had one electric light in it and also got some light from the main store through the wire, but as a rule there was very little light coming from the main store because goods were stacked along the walls and other places in the small room. Appellee was perfectly familiar with the room and the manner in which it was lighted and had been going into it since

August and taking the goods intended for his department out of same and taking it to the place where meats were sold in the main store building. There were about a half-dozen employees who assisted in conducting the business and who had access to the small room or night wareroom after the door was opened in the morning by H. C. Vincent, the general manager. Two of these employees were A. C. Moncrief, Jr., and Curtis Morgan. The floor in the little store room was not oiled or painted, but was made of hard wood. The rest of the store or most of it had a finished hard wood floor that was kept clear of dust after being cleaned by running an oil mop over it. The oil, bucket and mop used were kept in the main store and not in the little night wareroom. On Saturday night before the store was closed, A. C. Moncrief, Jr., cleaned up the store as well as the little room and the following Monday morning which was the 19th day of December, a bottle containing oil was seen by appellee after he was injured on the two by four, and oil had run out of the bottle onto the floor. On Monday morning about seven o'clock the superintendent and the employees appeared for work and the front door was opened by H. C. Vincent, and they all entered the store. H. C. Vincent went back to the little night storeroom and opened the door to it. Appellee went in the little storeroom and picked up the invoices of the meats left in there the night before for him to use in his departments. The little room was very full and his meat order was heavy, and in getting and selecting his distribution of goods, he with the assistance of A. C. Moncrief, Jr., had to move a quarter of beef. A. C. Moncrief, Jr., had come into the room with a little hand car to assist him in taking the meat out to his department. Appellee testified that he picked up one end of a quarter of meat and A. C. Moncrief, Jr., the other, and to maintain proper balance made a step backwards and stepped in a little smear of oil on the floor that had trickled off the two by four and he fell across some crates in an awkward sitting position and was forced to lie there two or three minutes before he could sit up; that he did not see the oil because it was about the color of the floor, but realized that he had stepped in oil be-

cause his foot slipped over the floor eight or nine inches; that he figured the oil had been spilled on the floor when the bottle was being filled from a little bucket that was used for that purpose and ran out on the floor. He also testified that after he had fallen A. C. Moncrief, Jr., and Curtis Morgan helped him up, and that while he was sitting there H. C. Vincent came back and asked him what was the matter, and he informed him that he slipped and fell, but said nothing to him about what caused him to slip or fall and also said that Fred Book came in afterwards and mopped the oil up. He further testified that he was taken to the hospital and after he had been treated there by having his back bandaged he returned to his work, but only worked a short while until Mr. Vincent telephoned for his wife to take him home in her car and said that he remained at home under treatment of his physician for about three or four days and then returned to his duties and continued to work until January 31, 1939, at which time he was discharged by Mr. Henzie, appellant's assistant state manager. He testified that in doing his work after the injury he sat around and directed the work rather than doing any of the hard work himself. He also said that he suffered acute pain from the injury received to his back being an injury to one of the vertebrae in the sacro-iliac region and continues to suffer great pain, and that due to the injury he lost his manhood. He then testified to the various light jobs he had obtained occasionally and the amount of money he had earned after the injury up and until the time of the trial.

He admitted that he had not mentioned to anyone about having slipped on oil on the floor in the little storeroom until after he was discharged, and that he had never made a claim to appellant on account of the injury he received until he brought his suit. He explained that the reason he did not put in a claim was because the company did not like for its employees to make claims on account of injuries received while working for it.

The facts detailed above are a summary of his own testimony relative to his injury and the manner in which

he received same. The physician who treated him testified relative to the injury and the extent thereof.

It may be stated in passing that A. C. Moncrief, Jr., and Curtis Morgan both testified that he did not slip and fall on anything, and that they did not lift him up. H. C. Vincent testified that he did not go back to the storeroom and see him in a sitting position, but that he noticed him when he was weighing up the meat or about to weigh it up at the meat department, and discovered that he seemed to be suffering, and that when he asked appellee what had happened to him, he replied that he sprained his back while lifting a quarter of beef, and that he made no mention of having slipped on oil in the little storeroom, nor of having fallen in there.

We think the jury may have reasonably inferred, from the testimony quoted, that the oil was spilled on the floor by A. C. Moncrief, Jr., on Saturday night, when he cleaned up the store. The bucket, mop and bottle of oil were used in cleaning up the main part of the store, and were kept under a sink back of the lavatory in the main part of the store. In addition to sweeping and oiling the floor in the main part of the building, he swept out the little delivery storeroom before it was locked. No one entered the small storeroom except from the alley to deliver goods from Saturday night until Monday morning, or used the oil in cleaning up the floor in the main part of the store, and, as stated above, the jury might have reasonably inferred that he took the bucket, mop and bottle of oil into the small room, and set them down while he was sweeping out same, and spilled some of the oil on the floor. It was not necessary or essential for him to take the bottle of oil into the room, as he did not oil that floor, but, in all likelihood, he did, as the bottle of oil was seen there by appellee after he was hurt, and that he saw one of the employees mop up the oil during the time he was sitting on the crate over which he fell.

We do not think it mere speculation or conjecture for the jury to have found that the oil was spilled on the floor by A. C. Moncrief, Jr., when he swept out the small wareroom. It is also quite reasonable that the oil re-

mained on the floor from Saturday night, at closing time, until Monday morning, when the store was opened, and the jury might have found that appellant failed to exercise reasonable care to discover and clean up the oil. If A. C. Moncrief, Jr., spilled the oil on the floor, or left the bottle of oil in a place and position where the oil could leak out on the floor, it was appellant's negligence, as he was a servant or employee of appellant. His negligence was appellant's negligence. Again, if the oil remained on the floor a sufficient length of time for appellant to have discovered and removed same, it was actionable negligence for it not to have done so if it resulted in injury to one who had not assumed the risk or was himself not guilty of contributory negligence.

The court stated, in the case of *Mosley* v. *Raines*, 183 Ark. 569, 37 S. W. 2d 78: "The master is not only bound to exercise reasonable care to furnish a safe place to work, but the servant has a right to assume that the master has performed his duty. It is, however, also thoroughly established by the decisions of this court that the master is presumed to have performed his duty, and the servant cannot recover for an injury unless he shows that the master was guilty of negligence and that the negligence of the master caused his injury. The master is liable for the consequences of his negligence, but he is not an insurer of the employee's safety. . . . It is not sufficient for a servant to show that he was injured and that the injury resulted from failure to furnish a safe place to work or defect in machinery, but he must go further and establish the fact that the injury happened because the master did not exercise proper care in the premises."

Under this statement of the court, when applied to the facts in the instant case, as viewed in the most favorable light to appellee, it can not be said that the jury was not justified in finding that appellant failed to exercise reasonable care to furnish appellee a safe place to work; that the appellant was guilty of negligence, and that its negligence caused his injury, and in finding that the injury happened because it did not exercise proper care in

the premises. At least, it can be said that there is substantial evidence in the record to support or sustain the finding of the jury as to liability on the part of appellant.

Appellant next contends that the court erred in giving appellee's requested instruction No. 4, which is as follows: "So if you find from a preponderance of the evidence that a pool of oil was allowed to accumulate upon the floor of the night delivery room of defendant's store in Crossett, Arkansas, upon the date and in the manner alleged in plaintiff's complaint, and on account of the presence of the oil, if in fact it was present, it was not a reasonably safe place for Phelps to do the work to which he was assigned, and in the exercise of ordinary care the defendant should have discovered the presence of said oil and either removed same or warned the plaintiff of its presence, and (if) you find that such failure on defendant's part was negligence and was the direct and proximate cause of plaintiff's injuries, if any, then, in the absence of any negligence or the assumption of the risk on plaintiff's part, the plaintiff Phelps is entitled to a verdict in his favor."

Appellant specifically objected to the instruction, on the ground that its effect was to tell the jury to return a verdict against appellant if it did not furnish a reasonably safe place for appellee to work, when, as a matter of law, appellant was only bound to exercise ordinary care to furnish appellee a reasonably safe place to work.

We do not think the effect of the instruction was to absolutely require appellant to furnish appellee a reasonably safe place to work, but only told the jury that the place would be an unsafe place for appellee to work if they should find that appellant negligently did certain things it ought not to have done or negligently omitted to do certain things it should have done which were the proximate cause of appellee's injury.

The correctness of instruction No. 1 in the case of *Berry Asphalt Co.* v. *Kidd,* 200 Ark. 1121, 143 S. W. 2d 42, was challenged upon the same ground that instruction No. 4 in the instant case is challenged. The two instruc-

tions are substantially alike insofar as they disclose the duty of the master to the servant relative to furnishing him a safe place to work. In the case referred to, this court said: "Cases, from many jurisdictions, are cited in appellee's brief, in which this duty has been variously expressed, some opinions saying that it is the duty of the master to exercise ordinary care and reasonable care to furnish the servant a safe place in which to work and safe appliances with which to work, while others state the duty of the master to be to furnish the servant a reasonably safe place in which to work and reasonably safe appliances with which to work, and there appears to be no difference in the legal significance between these two ways of expressing the master's duty. Neither statement imposes on the master the duty to furnish a safe place and safe appliances, but each requires only that the master exercise ordinary care in respect to the safety of such place and appliances."

Appellant's next contention for reversal of the judgment is that the trial court refused to declare a mistrial when the attorney for appellee questioned him concerning an alleged offer of compromise. This question was objected to, and the trial court sustained the objection and instructed the jury to disregard it. The question was not answered, and its prompt exclusion from the consideration of the jury prevented any prejudice to appellant, and the court did not err in refusing to declare a mistrial.

Appellant contends that the verdict is for a grossly excessive amount, and that the judgment should be reversed for that reason. In April or May, about nine months before appellee slipped and fell and injured his back, he admitted that he slipped and fell on some vegetable matter and injured his back while employed in appellant's store at Russellville, and in describing the injury he received at Russellville he said he slipped on decayed vegetable matter, and fell across some banana crates and hurt his second lumbar joint, so badly that he was under the care of a physician four weeks in May, 1938. He settled with appellant on account of that in-

jury for two weeks' wages and the payment of his doctor's bill. That injury was similar to the one he received when he slipped on the oil in the little storeroom at Crossett, the difference being that he testified that he injured the second lumbar joint at Russellville, and the last lumbar joint next to the sacro-iliac at Crossett. After his injury at Crossett, X-ray pictures were made which failed to reflect any fracture of either joint or any injury to either joint. He only remained away from his work four days on account of his injury, and continued to work until January 31, 1939, something over a month, and made no claim against appellant on account of his injury, and did not tell any of his fellow-employees who testified, nor the general manager, that he slipped on oil in the storeroom and hurt his back. There is nothing in the record showing that he was discharged because he could not or did not perform his duties. He, at no time, claimed that he could not perform his duties as usual, and was doing so when he was discharged for some undisclosed reason. Three months after his discharge he brought this suit, but claimed no damages for loss of manhood at the time. He filed an amendment to his complaint later claiming damages on account of the loss of sexual powers due to his injuries. He testified that prior to the injuries received by slipping on the oil and falling across some crates, he could perform the act of sexual intercourse, whereas he had been unable to do so subsequent to the injury. The medical evidence was to the effect that his spinal cord was not injured in any way, and that without injury to the cord his sexual powers would not be destroyed.

We think, therefore, that there is no substantial evidence to the effect that the injury caused him the loss of his manhood, but that this claim was an afterthought on his part thrown in to show that his injuries were permanent. Of course, loss of sexual powers, if lost, constituted a strong appeal to the jury for damages, but before damages should be assessed on account of the loss of manhood, the loss of the power of sexual intercourse should be shown by some substantial evidence. The expert testimony in this case is practically unanimous to

the effect that the injuries complained of would not impair appellee's power to perform the act of sexual intercourse.

The other evidence in the case is wholly insufficient to support the verdict of $1,500. No permament injury is shown. His injury, such as he received, was temporary, and prevented him from performing his regular duties for four or five days, and had he not been discharged, for some undisclosed reason, he would more than likely have continued to perform his duties, just as he did after he recovered from the injuries received at Russellville. He said that he suffered much pain, and will continue to do so; but it was not excruciating, as evidenced by his return to his work and the continuance of his regular duties for more than a month before his discharge. Only temporary and slight pain appearing, we cannot account for the verdict on any ground save the appeal to the jury for the loss of manhood, which is not supported by substantial evidence.

We think $500, at the most, would be ample remuneration for the injuries sustained and the pain suffered and endured by him, and unless appellees will enter a remittur of $1,000 within 15 days, the judgment will be reversed, and the cause remanded for a new trial. In the event appellee enters the remittur within the time allowed of $1,000, the judgment will be modified and affirmed for $500.