4-6157                                        146 S. W. 2d 704

Opinion delivered January 20, 1941.

*Henry Donham* and *Richard M. Ryan,* for appellant.
*Kenneth C. Coffelt* and *Wm. J. Kirby,* for appellee.

Smith, J. Appellee recovered a judgment in the sum of $500 to compensate an injury sustained while attempting to debark from one of appellant's trains on which he was riding as a passenger. The testimony is in irreconcilable conflict; but it is insisted that the testimony on appellee's behalf, when given its highest probative value,

is insufficient to sustain the verdict and the judgment rendered thereon.

Appellee's testimony was to the following effect. He bought a ticket at Benton to Traskwood, and found a seat in the smoking-car. Two members of the train passed through the car while the train was going from Benton to Traskwood, about fifteen minutes being required for that trip. One of appellant's employees, a conductor, not then on duty, placed a small box in the vestibule of the car. The box was made of pasteboard, and was about 10 or 12 inches square and about 6 inches high, and contained only the cap of the conductor who was riding "deadhead," as he expressed it. According to the testimony of the conductor of the train, the box "was lying over the couplings on the right-hand side as they came out; it was not in the way."

It is certain that the box was in the vestibule, and according to appellee's testimony, it was in his way when he left the car. Just how it got "in the way" is not clear. The movement of the train may have placed it there. It is argued that, even though the box had gotten in the way, it had not been there long enough for its presence to be discovered. But, according to appellee's testimony, two members of the train crew went through the vestibule, not together, but first one, and then, later, the other.

Appellee testified that as he left the train, there was another passenger in front of him, and that ". . . the box was on the left-hand side, just as you turn to make the steps out of the train. I know the box was on the left-hand side, because I hit it with my left foot, and it got between my legs, and I plunged out to the bottom on the ground. As I started to make the turn I stumbled over the box and started to fall, and I grabbed at the railing and plunged plumb out on the ground." There was testimony sharply contradictory; but there was other testimony corroborating that of appellee. The truth of this testimony was, of course, a question for the jury. If this testimony is true—and its truth has been concluded by the verdict of the jury—we think it sufficient

to support the finding that the presence of the box should have been discovered and its possible peril anticipated, had that high degree of care been exercised which the law imposed upon the carrier for the protection of its passengers.

Exceptions were saved to instructions numbered 1 and 2 defining this duty. These were to the effect that the "railroad company owed its passengers the highest degree of care which a prudent and cautious man would exercise reasonably consistent with its mode of conveyance and practical operation of its train during the time they are on the train or getting on or off thereof."

These instructions conformed to the law as it has been frequently declared, the case of *Prescott & N. W. R. R. Co.* v. *Thomas,* 114 Ark. 56, 167 S. W. 486, being one of many to that effect.

An exception was saved to instruction numbered 3, defining the measure of damages. This instruction reads as follows: "If you find for the plaintiff in this case you will assess his damages at such a sum as you find from the evidence will reasonably compensate him for the injuries sustained, if any, and in arriving at your verdict you may take into consideration his physical pain and mental anguish occasioned by the injury, if any; his doctor's bills incurred, if any, and that which he may be reasonably expected to incur in the future, if any, by reason of the injury, if any; his loss of time from work, if any, by reason of said injury, if any, and his pecuniary loss in the future, if any."

We think there was no error in giving this instruction. Among other objections made to it is the one that it permits a recovery to compensate future loss of time, whereas there is no testimony to support the finding that appellee sustained a permanent injury. It is objected also that the verdict is excessive.

We think neither of these objections can be sustained. Dr. L. L. Marshall testified that he made an X-ray examination, which showed "a crushing of the inter-vertebral disc between the 4th and 5th lumbar vertebrae, and overlapping of the 5th lateral process over the crest

of the ilium, and separation of the sacro-iliac joint on the left side," and that "An injury of that kind is always permanent, the seriousness of it depends on the class of labor the man has to do; it usually causes back-ache upon standing or lifting."

This testimony raised the question whether the injury was permanent. The testimony of Dr. Ashby, who gave appellee treatment on four or five occasions, is corroborative of that of Dr. Marshall. Appellee himself testified that he suffered great pain, and for three months was unable to work. These were, of course, all questions for the jury, and we are unable to say that the verdict is excessive.

Dr. Marshall's testimony had been taken by deposition, and in the deposition he made the statements above quoted. In his examination Dr. Ashby was asked this question: "Q. Doctor Marshall testified that that disc in between the 4th and 5th lumbar vertebraes was crushed and injured, is that a permanent injury—an injury of that kind?" Upon objection being made, and before the question was answered, it was re-stated as follows: "Q. Doctor, I am asking you if any injury to the back which results in a crushing of the disc between the 4th and 5th lumbar vertebraes—I am asking you if that is a serious, permanent and painful injury?"

We think there was no error in permitting Dr. Ashby to answer this question. He had not made an X-ray examination; but Dr. Marshall had, and Dr. Marshall had stated the facts disclosed by this picture. The question to Dr. Ashby was predicated upon testimony offered at the trial; but the truth of that testimony was, of course, a question for the jury. We think it was not error to permit Dr. Ashby, as an expert, to express an opinion on the prognosis of the injury which Dr. Marshall said the X-ray picture disclosed. This practice is quite common, and has many times been approved by this court. Late cases approving this practice are: *Arkansas Baking Co.* v. *Wyman,* 185 Ark. 310, 47 S. W. 2d 45; *Missouri State Life Ins. Co.* v. *Fodrea,* 185 Ark. 155, 46 S. W. 2d 638; *Safeway Stores, Inc.,* v. *Ingram,* 185 Ark. 1175, 51

S. W. 2d 985; *Great Republic Life Ins. Co.* v. *Lankford,* 198 Ark. 196, 127 S. W. 2d 811.

Upon the whole case, we find no error, and the judgment must be affirmed. It is so ordered.