MISSOURI PACIFIC RAILROAD COMPANY, THOMPSON, TRUSTEE, v. FORD.

4-6508                                    156 S. W. 2d 207

Opinion delivered December 1, 1941.

*Henry Donham* and *Richard M. Ryan,* for appellant.

*Glover & Glover,* for appellee.

SMITH, J.  Appellee brought this suit to recover damages to compensate a personal injury which he sustained on April 4, 1940. He alleged, and testified, that he was returning on one of appellant's trains from a trip he had made to Little Rock, and that the train arrived at Malvern, his destination, at about 11:30 p. m.  After leaving the train he started walking towards its rear on his way home when, because of the unsafe condition of the depot platform, on which he was walking, and the presence there of a stick of wood or some other soft substance on the platform, he was caused to fall in the direction of the moving train.  He fell against the train and his hand rested on the rail of the track before he could recover himself, and two of his fingers were injured, one to the extent that amputation was required.  He recovered a small judgment, not complained of as being excessive, from which is this appeal.

Appellee gave the following account of his injury: He had walked about 200 feet on the brick platform, which was not smooth, as some of the bricks composing it are higher than others, some are uneven, and there are sunken places in it.  The light bulbs over the platform were small and dirty, and there were no reflectors on them.  As he walked along the platform, he stepped on a stick, or something he thought was a stick, because it

appeared soft, which turned as he stepped on it, and he fell towards the train as the stick turned.

Appellee had signed a statement as to the manner of his injury, which he did not question or claim had been unfairly obtained, in which he stated that the platform was made of brick, and was smooth and even, that the platform was dry and there was no slippery substance on it so far as he knew, and that "As far as I can tell it must have been a stick or something round which rolled with me."

Appellee was accompanied on his trip by Sam Levisee who got off the train just behind appellee and walked behind him on the platform. Appellee was walking about 4 or 5 feet from the train, and they had walked about 165 to 175 feet when appellee fell. He pulled appellee from under the train and looked around to see what had caused appellee to fall, but he saw nothing to cause the fall. No one testified that a stick or other object over which appellee could have fallen was found on the platform.

The night chief of police testified that, when he heard of the accident, he made an examination of the station platform that night, and saw blood on the rail. He testified that the depot platform was made of brick, and was as smooth and even as brick walks generally are. He found nothing that would have caused anyone to fall. He identified, as being accurate, photographs of the platform at the place where blood was found on the adjacent rail.

A section foreman testified that it was his duty to keep the platform clean, and that he cleaned it whenever he saw trash on it, that he passed over the platform several times daily, and had passed over it on the day of appellee's injury. He made an inspection of the platform on the day after appellee's injury, and found it in first-class condition, but he did not find any object which would have caused appellee to fall.

It was not contended that the lights were not burning, the contention being that the bulbs were not clean and there were no reflectors on the bulbs; but they were

sufficient to disclose to the chief of police the blood on the rail, which was, of course, detected by its color, as the blood filled no perceptible space.

The photographs about which the witnesses testified appear in the transcript, and while due allowance must be made for the optical illusions of which photography is capable, it appears entirely certain that the platform was in good condition.

We conclude, therefore, that, if there was any negligence on the part of the railroad company, it arises out of the failure of the company to exercise due care to see that the premises were kept in a safe condition. The testimony is sufficient to support the finding that appellee tripped over a stick or other object on the platform, but shows nothing more, and this showing does not suffice to convict the railroad company of negligence.

It is said, at § 1365 of the chapter on Carriers, 10 Amer. Jur., p. 224, that "A common carrier is not liable for injuries caused by the presence of foreign or slippery substances upon the platforms or approaches leading thereto, unless it appears that the condition existed for such a length of time and under such circumstances as to charge the carrier with notice of its presence. In some jurisdictions the rule is more strictly applied."

There is no testimony whatever as to the length of time the stick had been on the platform, and it is pure speculation to say that it might have been discovered had proper care been exercised. The rule, as quoted from American Jurisprudence, has been applied by this court, not only in cases where the master has failed to make safe the servant's place of work, as in *Safeway Stores, Inc.,* v. *Phelps,* 201 Ark. 495, 145 S. W. 2d 337, but in the cases of passengers injured on trains while embarking or debarking, as for instance, the case of *Turner* v. *Hot Springs Street Ry. Co.,* 189 Ark. 894, 75 S. W. 2d 675, and the very recent case of *Missouri Pacific R. R. Co.* v. *Sorrells,* 201 Ark. 748, 146 S. W. 2d 704. The subject is extensively annotated in the case of *Davis* v. *South Side Elevated R. Co.,* 10 A. L. R. 259, and an additional annotation appears in 117 A. L. R. 522 to the case of *Ponton* v. *United Electric R. Co.*

There is a failure to show any actionable negligence on the part of the railroad company, and the judgment will, therefore, be reversed, and as the case appears to have been fully developed, it will be dismissed. It is so ordered.