GREAT REPUBLIC LIFE INSURANCE COMPANY v. LANKFORD.

4-5456                                              127 S. W. 2d 811

Opinion delivered May 1, 1939.

*Harry Neelly* and *Rose, Hemingway, Cantrell &
Loughborough,* for appellant.

*C. E. Yingling,* for appellee.

MEHAFFY, J.   Appellant issued its policy to the appellee for $1,000 on March 26, 1930.  The policy provided, among other things, for the payment to the insured of $10 disability benefits monthly.  This action was instituted by appellee against the appellant to recover the disability benefits.

Appellee alleged that as a result of disease, he became totally and permanently disabled on or about March 16, 1937, and furnished appellant with proof of such disability, and demanded payment of the benefits due him.

Appellant filed answer denying each and every material allegation of the complaint.

There was a verdict and judgment for the sum of $222.60. The case is here on appeal.

The appellee testified in substance that his occupation was farming and stock business principally, and that he had done some timber work; his father owns a farm at West Point and they worked together; he became disabled by disease in August, 1925, when he was injured; a horse fell on him; his back hurts all the time; he is nervous and growing worse; has heart trouble, and if he exerts himself the least bit he has sharp pains about the heart; if he goes too high up he cannot stand the pressure, gets out of breath; suffers pain all the time in his back, and suffers pain in the heart from time to time; also has hemorrhoids, a bad foot, and slight rupture; when he was able to farm he engaged in all kinds of farm work; clearing land, breaking new ground, hauling hay, hauling cross ties, baling hay, and any kind of farm work; since his disability, he has been forced to curtail his activities; has not been able to plow, haul hay, break new ground, and so on; had to discontinue his farming operations and dealing in stock.

There was other evidence tending to prove the disability of appellee. Dr. Rodgers and Dr. Dunklin testified that appellee was disabled; that his blood pressure at times would be as high as 180; at other times around 140, and he has a systolic murmur of the heart and myocarditis; he had arthritis, extreme pain in the left arm; myocarditis is a weakening of the heart muscles. Both physicians testified at length as to his ailments and physical condition.

It is not contended, however, that the evidence was not sufficient to sustain the verdict and judgment. The only contention made by appellant is that the court erred in permitting appellee to ask Dr. Rodgers the following question, and erred in permitting the doctor to answer:

"Q. Doctor Rodgers. Mr. Lankford is and has been a farmer all his life, engaged in farming on a rather

small scale, according to his testimony he has until recently, late in 1935, been engaged in practically all the activities, or all the activities, in fact, in connection with his farm work, such as breaking land with a walking plow and planting and cultivating crops with walking implements then following that up, of course, with gathering the crops, cutting, hauling and baling hay, and all such work as building fences, handling livestock, riding throughout the country buying it, roping it and loading it in trucks, and he has engaged in loading and unloading and hauling cross-ties and such activities as that. I will ask you whether or not, Doctor Rodgers, basing your answer upon the examination you have made of Mr. Lankford from time to time, whether or not in your opinion his physical condition is such as to make it either impossible or inadvisable for him to engage in all or a part of those activities?''

The physician answered as follows: ''I consider Mr. Lankford disabled to do hard manual labor which involves strenuous exercise like loading cross-ties or plowing or any exercise that requires extreme strain or effort. I consider him able to ride a horse or to do light manual labor.''

''I consider that the heart condition and his arthritis are permanent and will last as long as he lives.''

Dr. Dunklin was asked, over the objections of appellant, practically the same question that was asked Dr. Rodgers, and the same objection was made to this question and answer.

Dr. Dunklin answered as follows: ''It is my opinion that this man might at times do some one or some few of his duties as you have enumerated them, but he would never be able, for instance, to hire out as a farm laborer, he will never be able to follow this routine day in and day out, he couldn't do it.''

It is earnestly insisted by the appellant that the court erred in permitting these questions to be asked and answered by the physicians, and that for that reason the

case should be reversed. This is the only ground for reversal urged by appellant.

Appellant cites and quotes from numerous authorities to sustain its contention. The authorities, however, are in conflict on this question, and, moreover, the facts in the cases relied on by appellant differ somewhat from the facts in the instant case.

Appellant introduced Dr. Dishongh, who contradicted the physicians introduced by appellee in some respects. It was, however, a question of fact for the jury as to who's opinion they would believe.

It will be observed that Dr. Rodgers stated that he considered Lankford disabled to do hard manual labor which involves strenuous exercise, but considered him able to ride a horse or do light manual labor. He also stated that he considered the arthritis and his heart condition are permanent, and will last as long as he lives.

Dr. Dunklin gave it as his opinion that appellee might, at times, do some one or some few of his duties, but would never be able to hire out as a farm laborer; would never be able to follow this routine day in and day out.

Physicians, when they testify as experts, simply give their opinions, and do not testify about one's condition except to give their opinions.

The issue to be determined by the jury in this case was whether appellee was totally and permanently disabled. Certainly an ordinary layman would not be able to say what the result of arthritis or myocarditis or the other ailments mentioned by the physicians would be; and, for that reason, it is proper to introduce the testimony of experts who know about these things and give their opinions as to the results.

The rule is stated in 11 R. C. L., 583, 584, as follows: "It has sometimes been decided, and often assumed to be an inflexible rule of law, that an expert cannot testify to his opinion upon the precise fact which is in issue before the jury. To permit that, it is said, would put the expert in place of the jury and invade their peculiar

province. Thus, it has been held also that an expert may state that a certain cause may have produced the result under consideration, but cannot state that in his opinion it did produce it. But it is evidence that this supposed rule, when stated broadly as it often has been stated, involved great confusion of thought and leads to absurd consequences. It is certainly singular that a class of evidence which is admitted when it is only slightly pertinent should be rejected when it is of the highest pertinency. Irrelevancy is made a ground of admission, and relevancy of exclusion. Such evidence invades the province of the jury no more than does direct evidence of an eye witness to a decisive fact. In either case, if the jury are satisfied of the trustworthiness of the evidence it may be conclusive of the issue; but their duty is no more invaded in one case than in the other. Every expert opinion rests on an assumption of facts; if the opinion is given upon a hypothetical question, its weight depends wholly on the jury finding that the assumed facts have been proven; if it is based on the expert's own testimony as to the facts, the truth of this testimony is no less open to their belief or disbelief; and, in addition, the soundness of the opinion itself is to be determined by the jury in consideration of its apparent reasonableness or their confidence in the skill and truthworthiness of the witness, and of any contradiction from other experts. The rule leads to absurd results in its application. Thus it is held that an expert may testify to the value of land before an alteration and to its value afterward, and that the court must charge the jury that the difference in value is the measure of the damages, but that the expert cannot express an opinion as to the amount of damages. The technicality of the distinction is illustrated by the holding that facts may be elicited from the witness, from which the ultimate conclusion inevitably follows, though the conclusion cannot be stated. The court in so declaring, however, admitted that the difference was largely one of form. And in many cases the courts have refused to recognize such a distinction and have allowed the witness to testify directly to the ultimate conclusion.''

In the same section of R. C. L., it is also stated: "It seems safe to say, however, that the modern tendency is decidedly towards the more liberal practice, and that sooner or later no distinction will be made between evidential and ultimate facts as subjects of expert opinion."

If a witness is skilled in the science and practice of medicine, it is competent not only for him to give his opinion with relation to the disease, its character, etc., but he may also give his opinion as to the effects of the disease. Of course, after all, the jury is the judge of the weight to be attached to the opinions.

It would, in many cases, be useless to have the expert testify simply as to the name of the disease, without testifying as to its effects. *Tatum* v. *Mohr*, 21 Ark. 349. See, also, *Ark. Baking Co.* v. *Wyman*, 185 Ark. 310, 47 S. W. 2d 45; *Mutual Benefit Health & Accident Ass'n* v. *Bird*, 185 Ark. 445, 47 S. W. 2d 812; *Safeway Stores, Inc.* v. *Ingram*, 185 Ark. 1175, 51 S. W. 2d 985.

"Dr. McBratney, who qualified as an expert, testified that he had examined and X-rayed the plaintiff. Based upon his examination and certain facts assumed from the testimony in the record, he was asked his opinion as to the cause of plaintiff's condition. Similar questions were propounded to Dr. Tibe. The court sustained objections to their testimony on the ground that the answers called for would invade the province of the jury. But if the questions propounded were such that the jury might not be capable of determining them from the evidence, then it was proper that they should have the benefit of the opinion of an expert, even though the opinion went to the matter directly in issue. The purpose of a trial is to investigate the facts so as to ascertain the truth, and the modern tendency is to regard it as more important to get to the truth of the matter than to quibble over distinctions which are in many cases impracticable, and a witness may be permitted to state a fact known to him because of his expert knowledge, even though his statement may involve a certain element of inference or may involve the ultimate fact to be determined by

the jury." *Cropper* v. *Titanium Pigment Co.*, 8 Fed. 2d 1038, 78 A. L. R. 737.

It is frequently urged, as in the instant case, that the evidence of the physician invades the province of the jury. As to the effect of the disease, it is not a matter about which laymen are advised. The party may have such a disease as only physicians could tell about its effects. In dealing with questions of this sort, it would frequently be impossible for physicians to make clear to the jury the effect of the disease. *Andrew D. Cody* v. *John Hancock Mutual Life Ins. Co.*, 111 W. Va. 518, 163 S. E. 4, 86 A. L. R. 354.

The court did not commit error in permitting the questions and answers of the physicians.

The judgment is affirmed.