RUSSELL *v*. COFFMAN.

5-3164

376 S. W. 2d 269

Opinion delivered March 9, 1964.

*Williams & Gardner, Wright, Lindsey, Jennings, Lester & Shults,* for appellant.

*Gordon & Gordon,* for appellee.

ED. F. MCFADDIN, Associate Justice. This litigation results from a traffic mishap. Farris Coffman was plaintiff below and is appellee here. The defendants below and appellants here are Carl Russell, Coleman Dairy Company, Virgil Bewley, and Jones Truck Line. Coffman was driving west on Highway No. 64 in his pickup truck. Russell was driving east in the Coleman Dairy truck, and behind the Coleman Dairy truck Bewley was driving east in the Jones Truck Line tractor-trailer. The Jones Truck Line vehicle struck the rear of the Coleman Dairy truck and then jackknifed across the center line of the highway and struck the oncoming pickup truck of Farris Coffman, who was at all times in his proper lane on the highway. Coffman's truck was demolished and he received serious and painful injuries, for all of which he filed this action.[1] His complaint was

---

[1] Originally Coffman sued only Bewley and Jones Truck Line. They brought in Russell and Coleman Dairy as third party defendants; and then Coffman amended claiming relief against all of the four defendants. The jury verdict found Bewley and Jones Truck Line 65% negligent, and Russell and Coleman Dairy 35% negligent; and Coffman free of all negligence.

vigorously resisted by all four defendants, but jury trial resulted in a verdict and judgment in Coffman's favor for $25,000.00; and on this appeal the four appellants present these two points:

"I. The trial court committed prejudicial error in permitting the exhibition to the jury of Farris Coffman's kneecap and the exhibition to the Jury of colored slides of Coffman's kneecap taken in the operating room.

"II. The verdict for $25,000.00, exactly the amount for which recovery was sought, was excessive."

I. *Admission Of Evidence.* The collision occurred on January 10, 1962. Among other injuries Coffman received a severe injury to his left knee; and as the months passed the injury to the knee became more serious. Coffman's local physician, Dr. Wells, referred the patient to Dr. Kenneth Jones in Little Rock; and after considerable X-ray work and observation it was determined that Coffman had suffered a chondromalacia of the patella, which is an injury to the kneecap. His pain was constant and terrific; and it was finally found necessary to remove his kneecap. This was done on December 2, 1962, and after extended therapy and hospital treatment Mr. Coffman was again able to walk, but still used a cane.

At the trial Dr. Kenneth Jones, the orthopedic surgeon who performed the operation, testified in great detail about the injury to the kneecap, the necessity of the operation, and the therapy. That Dr. Kenneth Jones is an expert in his field was conceded at the trial. He showed two X-ray negatives to the jury, exhibited the scar on Mr. Coffman's knee, and then told of the operation. Dr. Jones testified that after the kneecap was removed and examined, the extensive chondromalacia of the surface of the kneecap was easily apparent. He had kept Mr. Coffman's kneecap in a preservative, and he exhibited this kneecap to the jury to explain the size of the kneecap and the injuries apparent to it. The defendants vigorously objected to the exhibition of this kneecap to the jury, and that is the point that is now urged on appeal.

After the kneecap was exhibited, Dr. Jones also exhibited two pictures[2] that he had taken of the kneecap immediately after it had been removed. The appellants insist that with the exhibition of the X-ray plates, the injured knee of Mr. Coffman, the pictures, and the detailed and lucid testimony of Dr. Jones, there was no need to exhibit the removed kneecap, and that such tended to inflame the jury and increase the verdict. On this point appellants cite such cases as *Anderson* v. *Seropian* (Calif.), 81 P. 521; *Rost* v. *Brooklyn Heights RR.*, 41 N.Y.S. 1069; *Evans* v. *Chicago RR.* (Minn.), 158 N.W. 335; and the quite recent case of *Harper* v. *Bolton* (S.C.), 124 S.E. 2d 54, in which the South Carolina Court said:

"The exhibition of injuries should not be permitted where such will not tend to throw any light on any issue in the case, nor should an exhibition be permitted where it is apparently designed merely to excite pity and commiseration . . .

"The exhibition of the enucleated eye of the respondent did not tend to throw any light on any issue in this case. We think the trial Judge committed error in permitting the introduction of the removed and preserved eye."

There is an exhaustive annotation in 66 A.L.R. 1334 entitled, "Propriety of permitting plaintiff in a personal injury action to exhibit his person to the jury"; and in Sections 12 and 13 of that annotation on page 1366 *et seq.*, there are listed cases in which enucleated eyes and amputated limbs and other separated parts of the body had been exhibited to the trial jury. There is no occasion for us to review all of these cases. In deciding the specific issue here before us, it is our conclusion that, under the facts and circumstances here existing, the Trial Court did not abuse its discretion in permitting the severed

[2] There is a dispute between counsel as to which side introduced the pictures of the removed kneecap; but the Trial Court found that it was one of the defendants' counsel who introduced the pictures. We attach little importance to this dispute for the reasons stated in the opinion.

kneecap of Mr. Coffman to be exhibited to the jury. What is a chondromalacia[3] of the patella and how extensive was the chondromalacia in this case? The average layman might know that "patella" means "kneecap"; but chondromalacia is a big word that doctors may understand but laymen do not. How large is a kneecap? Doctors know; but the average layman probably does not realize the size of a kneecap. The X-ray negatives throw little light on the subject. The pictures that Dr. Jones took of the amputated kneecap had in them nothing by which the size of the kneecap could be determined. Dr. Jones in his testimony used a plastic model which, of course, did not show the injury to this particular kneecap. But the most casual glance at this severed kneecap of Mr. Coffman revealed the injury; and thereby the jurors, in the first instance, and the Judges on appeal, are able to understand the testimony of Dr. Jones. It was not a matter of introducing the kneecap to inflame the jury, but rather to make the testimony of Dr. Jones more easily understood. After examining the kneecap and reviewing his testimony, we are thoroughly convinced that the Trial Court did not abuse its discretion in allowing this severed kneecap to be exhibited to the jury.

Furthermore, the defendants had filed a general denial; and under that denial, for aught the Court knew when the kneecap was introduced, the defendants might have introduced evidence designed to show that the entire operation was unnecessary. The fact that the defendants in presenting their case did not see fit to introduce any medical evidence to dispute Dr. Jones' testimony, does not establish that when the kneecap was exhibited in the plaintiff's case in chief, the defendants had at that time ever admitted the necessity of the opera-

---

[3] Maloy's Medical Dictionary for Lawyers defines chondromalacia as "a morbid or unnatural softness of the cartilages." Dr. Jones testified: "Chondromalacia means a softness of the articular cartilage of any articular surface: that is, the surface of the bone that goes to make up the gliding surface of a joint . . . It is something like the bearing in a motor wearing out or becoming roughened. The joint no longer works as a smooth, gliding surface."

tion; and the severed kneecap was evidence designed to establish that the operation was necessary.

II. *Excessiveness. Of The Verdict.* The jury returned a verdict for Mr. Coffman for $25,000.00, and it is claimed that this amount is so grossly excessive as to shock the conscience of the Court; but we find no merit to this contention. It was shown that Mr. Coffman was 49 years of age and that a man of that age has a life expectancy of 22.12 years. Mr. Coffman was a cattle buyer by trade. A portion of his work was to attend auction sales to buy cattle and hogs for a packing company; and another portion of his work was to engage in "country and alley trading." This latter required him to jump onto trucks and look at cattle, to go out into the country and round up cattle, and to walk through pastures and fields. Even after his operation he could attend the livestock sales, because most of that work could be done while he was seated; but his ability to engage in "country and alley trading" was materially reduced on account of the removal of his kneecap. Mr. Coffman testified as to his earnings before his injury and before the trial, and as to his inability to engage in a portion of his work since his injury; and the doctors testified as to the permanency of his injury. Mr. Coffman had expended large amounts for doctor bills and hospital bills, and medicine; and he had experienced pain and suffering. It was furthermore testified that he still had, and probably would always have, chondromalacia of the lower end of the femur, the bone on which the kneecap functions. Obviously this femur bone cannot be removed. Whether arthritis will develop is something as to which the doctors have different views. That there will continue to be pain from the chondromalacia of the lower end of the femur is clearly shown. In addition to all these other injuries, Mr. Coffman suffered some fractured ribs and a whiplash injury. There is no need to detail all of his injuries: it is sufficient to say that the verdict for $25,000.00 is not so grossly excessive as to shock the conscience.

Affirmed.