RAYMOND REED ET AL *v*. FRANK McGIBBONEY ET AL

5-4298                                      422 S. W. 2d 115

Opinion delivered December 18, 1967
[Rehearing denied January 22, 1968]

*Hodges, Hodges & Hodges* and *John Burris,* for appellants.

*Lightle & Tedder,* for appellees.

CONLEY BYRD, Justice. Appellants Raymond Reed, the driver, and Ray Whitkamp, the owner of an automobile involved in a head-on collison near Cabot, Arkansas, which injured appellees Mr. and Mrs. Frank McGibboney, their daughter Sheila and Mrs. McGibboney's sister, Jackie L. Hamilton, on August 23, 1965, appeal from judgments totaling $47,100, raising numerous issues.

Ray Whitkamp, Lee Huckabee, Henry Schaechtel and Alvin Slayton were members of the Southern Farmers Association Cooperative. On August 23, 1965, at the suggestion of the local manager of the Co-op, they attended an open house of the Southern Farmers Association in Little Rock with Raymond Reed. They drove from Pocahontas in Whitkamp's car, with Reed driving at Whitkamp's request. On the return trip, at a point on highway 67 six-tenths of a mile south

of the Cabot city limits, Reed drove over a rise in the highway and found that a car ahead had stopped to make a left turn off the highway. Two cars were stacked up behind the left-turning vehicle and a third car immediately in front of Reed, driven by Richard Thompson, pulled to the right shoulder to avoid colliding with the stacked up vehicles. When Reed was unable to stop before colliding with the vehicles ahead, he pulled to his left in an effort to pass the stacked vehicles and turn into a driveway off the left side of the highway. In so doing, he collided with a vehicle driven in the opposite direction by Frank McGibboney, in which the other appellees were passengers. The collision occurred at a point some two to twelve feet off the paved portion of the highway.

Frank McGibboney received cuts and contusions. His pregnant wife received, in addition to cuts and contusions, a comminuted tibial plateau fracture of the knee and fractures of the second and third metacarpals (the bones immediately between the knuckles and the wrist) of the right hand.

Sheila McGibboney had a minor concussion and several cuts, contusions and bruises which resulted in a two-inch scar on her head near the hairline.

Jackie Hamilton received multiple lacerations of the face and nose, requiring over 200 sutures. She was bleeding so profusely at the scene of the accident that she was blinded with her own blood and thought she was going to die because of the blood coming from her throat. Her facial scars are permanent and will persist even with plastic surgery.

The jury awarded $1,350 to Frank McGibboney, $750 to his daughter Sheila, $15,000 to his wife, and $30,000 to Jackie L. Hamilton.

Appellants' first contention is that the trial court erred in admitting color photographs, made by Dr.

Hayes, of Jackie Hamilton's condition when she arrived at the hospital. Even though the trial court found the photographs to be inflamatory, we do not think he committed reversible error in permitting them to be introduced and exhibited to the jury. In *Russell* v. *Coffman*, 237 Ark. 778, 376 S. W. 2d 269 (1964), we pointed out that the admission of photographs is ordinarily within the trial court's discretion, particularly when the picture is an aid to making the testimony of the witnesses more easily understood. We think our reasoning there is sound, for if a Thomas Gray, a William Shakespeare or an Edgar Allan Poe had witnessed the accident, their descriptions of it would as aptly and inflammatorily have described Jackie Hamilton's condition as do the pictures in this record. And while appellants would agree that the eloquence of a Gray, a Shakespeare or a Poe would not help their cause, we do not believe that they would argue that their word description would not be legitimate or proper to go to the jury. Consequently we do not find the pictures, which show what words would have described, to have been improperly admitted. The pictures certainly demonstrated that Jackie Hamilton was not puffing when she said she feared for her life.

On the day following the collision Herman West, accompanied by appellees' attorney, made photographs of the scene of the accident. At the trial, both he and State Trooper Lyndell Holcomb were permitted, over objection, to identify on the photographs the point of impact of the two vehicles. While such identification may not be technically proper, under the record here we are unable to see how the matter constitutes reversible error. It was not disputed that Reed pulled into the left lane or that the collision occurred off the paved portion of the highway. Reed testified that he did not see the McGibboney vehicle coming from the north until he pulled to the left, and unequivocally stated that he knew he was going to have a wreck there anyway if he could not get off. He expected to hit someone and pulled to the left because in his opinion that was the best thing

to do. The testimony of witnesses West and Holcomb was to matters ordinarily stipulated in a trial of this kind, and we find that any error of the trial court in connection with the point of impact is harmless error.

Appellants complain of the testimony of Drs. Hayes and McKenzie about the possible aftermath of the injuries to Jackie Hamilton and Mrs. McGibboney. Dr. Hayes' testimony concerned the effect that facial scars such as Jackie's could have upon young girls of her age. The doctor testified that he could not predict what would happen in an individual case—that he had seen young girls become sort of recluses and others who did not give any external evidence of psychological maladjustment. His testimony was that it might affect her in the future. Dr. McKenzie testified that there was a possibility of Mrs. McGibboney's developing an arthritic change in her knee because of the fracture of the cartilage and the inability to get a complete anatomical reduction of the surface of the lateral joint space.

We agree with the trial court that Dr. Hayes' medical opinion about the psychological effect in general of such scars upon young girls was properly admissible. We also agree with the trial court that Dr. McKenzie's statement was proper, since his other testimony showed that Mrs. McGibboney had already developed some arthritic changes in her right ankle from injuries received in a prior accident. *Great Republic Life Ins. Co. v. Lankford*, 198 Ark. 166, 127 S. W. 2d 811 (1939)

On the issue of joint enterprise, the proof shows that the Co-op members were traveling in Whitkamp's car, driven by Reed, for the common purpose of attending a Southern Farmers Association open house. Mr. Whitkamp asked Reed to drive his automobile. Whitkamp stated that he could have asked him to stop the car and taken control himself at any time. Upon this evidence plaintiffs offered the joint enterprise instruction (A.M.I. 712). Appellants' objections to the instruction were as follows:

794

> "MR. HODGES: We submit, in behalf of the defendants, that there is no evidence of joint enterprise in this case; that if there is any evidence of any sort to go to the jury, which we deny, it is rather evidence of agency relationship and should be corrected and defined to them in those terms rather than joint enterprise.
>
> THE COURT: This is an objection which you are stating to plaintiffs' requested instruction No. 3?
>
> MR. HODGES: Yes, sir.
>
> THE COURT: It has to do with joint enterprise and the Court is giving said requested instruction as it is requested and the objection thereto is overruled.
>
> MR. HODGES: Note our exceptions to the Court's ruling."

Appellant argues here that the joint enterprise instruction was erroneous and that the trial court should have submitted to the jury the instruction on agency (A.M.I. 705). In accordance with *Woodard* v. *Holliday,* 235 Ark. 744, 361 S. W. 2d 744 (1962), we hold that there was a sufficient showing of a community of interest and of equal right to share in the control and operation of the vehicle to warrant the submission to the jury of Whitkamp's vicarious liability upon either the theory of joint enterprise, or the theory of agency, or both. However, we point out that appellants did not offer an instruction on agency and they are not now in a position to complain of the trial court's action in not instructing the jury that they could in the alternative have found an agency relationship instead of a joint enterprise.

The alleged error of the trial court in failing to instruct the jury with reference to the imputed negligence of McGibboney to his passengers is without merit, since the jury specifically found upon an interrogatory that McGibboney was not negligent.

On the rule of the road instruction (A.M.I. 901[B]) the trial court instructed the jury that "When the driver sees danger ahead, or it is reasonably apparent if he is keeping a proper lookout, then he is required to use ordinary care to have his vehicle under control . . ." Since the evidence shows that McGibboney, as he proceeded along the highway, saw the vehicle waiting to make the left turn and the two or three vehicles stacked up behind it, appellants argue that the rule of the road instruction (A.M.I. 901[B]) should have included the phrase "or if he is warned of approaching imminent danger." We hold this contention to be without merit. To hold otherwise would place the court in the position of saying that every motorist when passing a vehicle waiting to make a left turn is warned of approaching imminent danger. This we are not willing to do.

Appellants' contention that the trial court erred in instructing on speed, following too closely, and overtaking and passing is not supported by the evidence. Reed admits that, at the speed at which he was traveling, he could not stop in time to avoid colliding with the vehicle in front of him; and that to avoid that collision he pulled to the left to pass the stacked up vehicles with the intention of turning into a driveway on the left or west side of the highway.

We can find no evidence in the record to support appellants' contention that the trial court should have instructed the jury on the duty and care of a passenger (A.M.I. 910).

In applying the rule on the duty and care of a passenger, we must keep in mind that before there is any substantial evidence to submit the issue to the jury, it must be shown that the passenger's conduct was a negligent act or omission and that in the production of the injury, it operated as a proximate cause or one of the proximate causes and not merely as a condition.

Furthermore, one is not negligent in assuming, until the contrary is or reasonably should be apparent, that every other person will use ordinary care and obey the law.

In the oncoming lane of traffic facing McGibboney was a vehicle signaling a left turn across his lane of traffic, and two more vehicles stacked up behind the waiting left turn vehicle. That situation, of itself, created no duty upon the passengers or guests in McGibboney's vehicle to warn him of imminent danger.

If we should assume that the failure of the passengers to see the movement of appellants' vehicle into their traffic lane was a negligent act or omission, we are then met with the issue of causation. The facts show that appellants were traveling north at approximately 60 miles per hour (or 88 feet per second) and that the McGibboney vehicle was proceeding in the opposite direction at the same approximate speed. Because of the rise in the road the two vehicles were not visible to each other for any great distance. Reed did not see McGibboney until he got in McGibboney's lane of travel. McGibboney estimates the distance from his vehicle to Reed's when Reed came into his lane as 75 yards. Both drivers place the distance at which they could first have seen each other at much less than a quarter of a mile. Therefore, if the passengers upon the point of first visibility had warned McGibboney, "Watch out, that car is apt to come over in our lane," it will be observed that, on the basis of 120 words of speech per minute, the collision could have already occurred before the warning had been completed—for the closing distance between the two cars was at the rate of 176 feet per second. What we have demonstrated here is that, in this head-on collision, the thing happened so fast that it would be pure speculation for the jury to find that the passengers' failure to warn the driver was a proximate cause of their injuries. Our law does not permit the jury so to speculate.

If appellants' contention about the due care instruction be on the basis that the passengers' injuries would not have been as great if they had been using ordinary care for their own safety, they are again met with a lack of proof. There is nothing in the record but speculation to show that the injuries would have been minimized had the passengers been keeping the lookout which appellants would now desire.

Nor do we find the verdicts in favor of Mrs. McGibboney and Miss Hamilton to be excessive.

The point which disturbs us most is the trial judge's modification of Arkansas Model Instructions 204 and 206 over the objection of both parties. The instruction as requested, being a modification of A.M.I. 206, states:

"As a defense to the claims of Frank McGibboney, . . . and Jackie L. Hamilton, it is contended by the defendants that Frank McGibboney was guilty of negligence which was a proximate cause of his own damages, *and that his negligence was chargeable to the other plaintiffs.*"

The trial court struck the above paragraph and substituted the following:

"As a defense to the claims of plaintiffs defendants plead contributory negligence on the part of plaintiffs' driver."

The Arkansas Model Instructions were adopted by a per curiam order of this court on April 19, 1965—the order is copied inside the front cover of the book—and since that time appeals to this court involving automobile cases have been materially reduced. The committee on model instructions has worded each instruction so that it may be read in conjunction with all other instructions without the necessity of any definitions other than those included therein. However, we must note that the instruction here was not offered by appellants in

the exact form set out in the book, but that it had added thereto the italicized words with reference to the imputed liability of the passengers in the McGibboney vehicle. Since there was no testimony to warrant an instruction on imputed negligence of the passengers in the McGibboney vehicle, the trial court did not err in refusing to give it as requested. Furthermore, the record shows that, in his oral statement of the case to the jury, the trial court stated the issues in the almost identical language of A.M.I. 206, and that an interrogatory was submitted to the jury upon the "negligence" of McGibboney. Under these circumstances, although we would have preferred the exact language of A.M.I. 206, we are unable to say that the use of the phrase "contributory negligence" amounted to a reversible error.

Affirmed.

HARRIS, C. J. and BROWN, J., dissent.

LYLE BROWN, Justice, dissenting. I would reverse as to the judgment favoring Jackie L. Hamilton. Four gruesome colored pictures, taken shortly after the accident and when she was unconscious, were admitted in evidence. Substantial portions of her face were caked with blood. Two of the four exhibits are identical. All four pictures are very similar. The trial judge admitted the exhibits were inflammatory but ruled they were not prejudicial. They were shown to the jury on a projector.

The trial court concededly had wide latitude in determining the admissibility of the pictures. Had it admitted *one* and rejected the others we might well have a different situation. But the four inflammatory pictures of such striking similarity served no legitimate purpose, the inescapable result being that fuel was added to the flame of sympathy, and prejudice was certain to follow.

It is my decided view that the trial court abused its discretion.

HARRIS, C. J., joins in this dissent.