ALLEN FRANK DAVIS v. STATE OF ARKANSAS

5-5378                                                    440 S.W. 2d 344

Opinion Delivered May 5, 1969

[Rehearing denied June 2, 1969.]

840.

*Jack Holt Sr.* and *Bailey, Trimble & Holt* for appellant.

*Joe Purcell,* Atty. Gen.; *Don Langston,* Asst. Atty. Gen., for appellee.

CONLEY BYRD, Justice.    On January 19, 1967, appellant Allen Frank Davis shot and killed his estranged wife Sharon Davis with a 30-30 caliber rifle.    The jury found him guilty of murder in the first degree without recommendation and he stands before this court sentenced to death by electrocution.    His defense was not guilty by reason of insanity.

The record shows that appellant and his wife Sharon separated in August of 1966.    Following the separation, appellant lived with his mother.    On the date involved, appellant had caused his wife to be kept under surveillance by a friend.    About quitting time appellant joined his friend across the street from where his wife worked. When he joined his friend he had with him a denim jacket described by his friend as being stiff enough to stand in the corner alone.    While they were watching, his mother-in-law drove by with his children to pick up his wife.    Appellant told his friend that he hated his mother-in-law but liked her cooking and, in parting, told him he was going to do something that he should have done a long time ago.    His mother-in-law and Sharon proceeded to the Red Bird Laundromat and Service Station on Central Avenue.    Appellant followed.    At the laundromat he exchanged some words with his wife before he shot her.    He also shot his mother-in-law when she ran into the laundromat for help.    Witnesses testified that as he drove away he brandished his shooting iron and shouted, ''Sharon, how do you like that.'' Appellant was arrested at his mother's home a few minutes later where he was sprawled out on a bed in a

stupor after taking some pills. The 30-30 rifle was found wrapped in his denim jacket in a dog pen.

POINT 1. Appellant, in arguing that he was deprived of his rights under the fifth amendment of the United States Constitution by virtue of the fact that he was tried and convicted upon an information, readily recognized that we have rejected this argument many times. Prosecution by information is authorized by Amendment 21 of our constitution. As we have pointed out many times the Federal Courts have not held that prosecution by information is prohibited by the United States Constitution. For this reason we hold appellant's first point to be without merit.

POINT 2. Appellant contends here that the trial court erred, under the holding in *Witherspoon* v. *Illinois,* 391 U.S. 510 (1968), in excluding jurors who had conscientious scruples against capital punishment. A subsidiary argument is that the trial court insured the prosecution's request for a conviction and death sentence by excluding all prospective jurors who said they opposed the death sentence or had religious or conscientious scruples against the death penalty. We do not believe that the record sustains appellant's argument.

As we read the record, the trial court followed the *Witherspoon* case, excluding Justice Douglas's concurrence, and our own case of *Atkins* v. *State,* 16 Ark. 568 (1855). In the latter case we pointed out:

> "Whatever may be a man's view of capital punishment as a question of policy, the jury box is not a proper place for him to consider such policy. There he is obliged, by his oath, to try the guilt or innocence of the accused, according to law and evidence, and not to set up his own private opinion against the policy of the law, which he is bound, as a good citizen, to abide by and administer, so long as it is force, and until it is repealed by the consti-

tuted authority.    See the authorities collected on
this subject in *Wharton's Crim. Law* 857, 858."

To follow appellant's argument to its logical con-
clusion would create a kind of anarchy in our system of
government whereby the minority will always hold a
veto over any established public policy.    For instance,
since the holding in *Bloom* v. *Illinois,* 391 U.S. 194
(1968), it would be almost impossible to enforce some
provisions of the 1964 Civil Rights Act, if a court were
forced to accept jurors whose private opinions are con-
trary to the policy of the law.    For these reasons we
find this point without merit.

POINT 3.    We find no merit in appellant's argu-
ment that the trial court abused its discretion in ad-
mitting in evidence pictures taken by William Ralph
Dever, Jr.    The record shows that Mr. Dever is a com-
mercial photographer and a mail man.    He has a police
radio receiver in his car.    When he heard the call con-
cerning the shooting he immediately went to the scene
and took the pictures of which appellant complains.    In
permitting the pictures to be introduced, the trial court
pointed out that they were taken within a reasonable
time after the incident involved and that they helped
explain the testimony as to what actually occurred, noth-
ing more, nothing less.

In *Stewart* v. *State,* 233 Ark. 458, 345 S.W. 2d 472
(1961), we pointed out that it is within the sound dis-
cretion of the trial judge to permit the introduction of
photographs to describe and to identify the premises
which were the scene of the crime, to establish the corpus
delicti of the crime charged, to disclose the environment
of the crime at the time it was committed and to corrobo-
rate testimony.    See also, *Reed* v. *McGibboney,* 243 Ark.
789, 422 S.W. 2d 115 (1967).

Under this point appellant also argues that the pic-
tures introduced into evidence concerning Mrs. Knight's

shooting and the bloodstained floor from which she was removed are not relevant, material or competent. Here, too, we find this was a matter within the discretion of the trial court. The record shows that at the time Mrs. Knight picked up appellant's estranged wife, appellant expressed hatred for Mrs. Knight, his mother-in-law. Since the shootings were all one occurrence we are unwilling to say that the photographs could not be introduced for the purpose of showing malice.

POINT 4. On the issue of insanity, appellant used two expert witnesses, Dr. Shelton Fowler, a psychiatrist on the Arkansas State Hospital staff, and Dr. Robert F. Shannon, a private psychiatrist. Dr. Fowler's treatment was limited to his duties as an employee of the state hospital. Dr. Shannon was employed by appellant's mother for purposes of testifying at the trial.

To rebut appellant's expert testimony, the state called Dr. Yohe, a psychiatrist hired by Garland County to examine appellant for purposes of determining his sanity, and Dr. Robert Lewis, a psychiatrist originally employed by appellant's mother for medical treatment and psychiatric evaluation immediately following appellant's arrest. Appellant argues that the testimony of the latter two doctors is privileged within the meaning of Ark. Stat. Ann. § 28-607 (Repl. 1962). That statute provides:

"Hereafter no person authorized to practice physic or surgery and no trained nurses shall be compelled to disclose any information which he may have acquired from his patient while attending in a professional character and which information was necessary to enable him to prescribe as a physician or do any act for him as a surgeon or trained nurse. Provided, if two [2] or more physicians or nurses are, or have been in attendance on the patient for the same ailment, the patient by waiving the privilege attaching to any of said physicians or nurses,

844

by calling said physician or nurse to testify con-
cerning said ailment, shall be deemed to have
waived the privilege attaching to the other physi-
cians or nurses.''

We find that when appellant called Dr. Shannon, as
distinguished from Dr. Fowler, who may have served in
a different capacity, he waived any privilege which he
may have had a right to claim under the statute.

POINT 5. Appellant here argues that the verdict
of the jury ignores the overwhelming evidence of insan-
ity and that their verdict is contrary to the evidence and
to the law concerning insanity.   Our cases, without ex-
ception, hold that when there is conflicting evidence upon
an issue the matter should be presented to the jury. In
this instance there was testimony from which the jury
could have found either way.   In addition to the lay
testimony, two doctors testified that appellant was in-
sane and two doctors for the state testified that appel-
lant was mentally competent.   Therefore we find this
contention without merit.

POINT 6. In his argument on instructions, appel-
lant admits that the insanity instruction given by the
trial court is in accordance with *Bell* v. *State,* 120 Ark.
530, 180 S.W. 186 (1915), but puts forth the argument
adopted by the author in 20 Ark. Law Review 123 that
the rule in *Bell* v. *State* represents ''the hardened atti-
tude''.   Appellant's description of the insanity rule
laid down in *Bell* v. *State* is that of the author of the law
review article referred to above.   We do not necessar-
ily accept as accurate appellant's description of the rule
there laid down.   However, we do acknowledge that the
rule of who has the burden of proof on the issue of in-
sanity is not uniform in the many jurisdictions in this
nation.   The rule in *Bell* v. *State* has been applied many
times by this court and in a number of cases in which
other rules have been rejected.   See *Stewart* v. *State,*
233 Ark. 458, 345 S.W. 2d 472 (1961).   We again reaf-

firm *Bell* v. *State* in holding appellant's objections to the trial court's instruction No. 5 to be without merit.

Appellant also complains of error in the trial court's refusal to give his instructions numbers 1 and 3. His instruction No. 1 had to do with the burden of proof in the whole case and was covered by other instructions given by the court. Appellant's instruction No. 3 merely gave a definition of preponderance of the evidence, and this too we find was covered by the court's instructions numbers 5 and 6.

Appellant's requested instruction No. 9 provides: "You are hereby instructed that if you should find that the defendant, Frank Davis, was in fact under the influence of alcohol and/or drugs to the extent that he would be incapable of forming an intent, then you must find the defendant not guilty of the charge of murder in the first degree." We find no evidence in the record to warrant the submission of instruction No. 9 with reference to intent. The uncontradicted testimony in the record shows that he was driving his automobile at the time and that after the shooting he entered his mother's home and told her that he wanted a conference with her. It is true that he was found by the officers on the bed in a blacked-out condition, but here again the testimony shows that it was a result of some pills taken subsequent to the shooting.

POINT 7. In arguing that the trial court erred in excluding the appellant and/or permitting his absence during trial, appellant refers to conferences in chambers between the court and counsel. The first such conference was conducted on the admissibility of certain evidence from Officer Seal. This conference was requested by the court and before any proceedings were had, the deputy prosecuting attorney, Mr. Harrison, asked appellant's counsel if he wanted appellant present. Appellant's counsel replied, "We don't know, we don't

know what is going to happen." All other such conferences between court and counsel were had at the request of appellant's counsel.

Therefore, as we read the record there was no exclusion of appellant from the in-chamber hearings. Furthermore the record shows that all rulings made as result of the in-chamber hearings were again made in open court before the jury, except in those instances when counsel for appellant specifically requested such rulings be made in chambers and not before the jury. Under these circumstances we find that if any error was committed, it was waived by appellant and his counsel. See *Davidson* v. *State*, 108 Ark. 191, 158 S.W. 1103 (1913), and *Nelson* v. *State*, 190 Ark. 1027, 82 S.W. 2d 519 (1935). In holding that there was a waiver, we specifically point out that appellant was not excluded from such hearings and that the conduct complained of involved matters ordinarily conducted by attorneys upon objections made in open court prior to the entry in chambers.

POINT 8. Appellant's last argument is that the imposition of the death sentence constitutes cruel and unusual punishment. In making this argument, appellant acknowledges that this court has held that punishment authorized by statute is not cruel and unusual unless it is barbarous or unknown to the law, or so wholly disproportionate to the nature of the offense as to shock the moral sense of the community. In making this statement, however, appellant poses this question, "Does the moral sense of this community, taking a cross-section of its people, adhere to and approve the taking of human life as fit punishment?" Our answer to appellant's question is that it should be addressed to the legislature instead of the courts, except in those instances wherein the court may exercise its discretion under Ark. Stat. Ann. § 43-2310 (Repl. 1964). From our reading of the record we are not in a position to say that the punishment assessed is greater than ought to be inflicted under

the circumstances here shown. We make this observation without determining whether the statute vests the discretion in the trial court or in this court or both.

In his motion for new trial appellant raised other issues. We find all such issues to be without merit.

Affirmed.

Holt, J., not participating.

Harris, C.J., dissents.

Carleton Harris, Chief Justice. I think the trial court committed error by allowing state exhibits No. 7, 8, 9 and 10 to be introduced into evidence. These exhibits all relate to the shooting of Mrs. Pauline Knight, mother of the deceased, Sharon Davis. Mrs. Davis was shot while sitting in her automobile, and Mrs. Knight was shot just outside the Laundromat. Exhibit 7 shows Mrs. Knight lying in front of the Laundromat door; exhibit No. 8 depicts the same scene from a different angle; both No. 9 and No. 10 show a large pool of blood left in the doorway after Mrs. Knight had been removed.

I do not consider this evidence to be relevant, nor proper, to the crime with which Davis was charged (the murder of his wife). The shooting of Mrs. Knight was an entirely separate offense, for which he could also have been tried, and this evidence had nothing to do with appellant's motive in killing Mrs. Davis. The majority say:

"Under this point appellant also argues that the pictures introduced into evidence concerning Mrs. Knight's shooting and the bloodstained floor from which she was removed are not relevant, material or competent. Here, too, we find this was a matter within the discretion of the trial court. The

848

record shows that at the time Mrs. Knight picked up appellant's estranged wife, appellant expressed hatred for Mrs. Knight, his mother-in-law. Since the shootings were all one occurrence we are unwilling to say that the photographs could not be introduced for the purpose of showing malice."

Malice for whom? The majority answer that question by saying that Davis had expressed hatred for his mother-in-law. Since hatred for his mother-in-law was not the reason for his shooting his wife, I can see no reason for the court to have permitted the introduction of these photographs. In *State* v. *Palmer* (La.), 80 So. 2d 374, the Louisiana Supreme Court said:

"In determining their admissibility, proper inquiry should be made to ascertain whether such evidence would clarify some material issue and would afford the court and the jury a clearer comprehension of existing physical facts and throw greater light and more accurate appreciation of the weight, if any, to be given the oral testimony. Manifestly, where photographs are irrelevant or immaterial, would confuse, or mislead, rather than be helpful, distract the tribunal's attention to other than main issues, or where the natural effect of their introduction in evidence would arouse the sympathies or prejudices, rather than throw helpful light, such evidence should be promptly excluded."

In Volume 1, Wharton's Criminal Evidence (12th Edition), § 154, page 299, we find:

"The requirement that evidence be relevant applies to documents and photographs with the same force and effect as to other forms of evidence. They must be relevant to establish or disprove *the fact concerning which they are offered.*[1]"

---

[1] My emphasis.

In Volume 2 of the same edition, Section 686, Page 652, it is said:

> "As in the case of all evidence, photographs must be relevant, and are inadmissible if they introduce a substantial irrelevant element. Thus a photograph of the victim of the crime and of a weapon is inadmissible when the weapon is not related to the crime."

In line with these authorities, I maintain that the photographs of the shooting of Mrs. Knight were not relevant to establish the fact sought to be proved, i.e., the murder of Mrs. Davis. Mrs. Davis had already been mortally wounded before Mrs. Knight was shot, and the photographs therefore were not related to the crime with which Davis was charged and convicted. It is my view that this evidence could only distract the jury's attention from the main issue, and could only tend to arouse prejudice against appellant.

Because, in my opinion, the court erred in allowing the photographs relating to Mrs. Knight to be introduced, I would reverse the judgment.