84

James Edward WILLIAMS *v.* STATE of Arkansas

CR 89-96                                    776 S.W.2d 359

Supreme Court of Arkansas
Opinion delivered September 25, 1989

*Bob Keeter*, for appellant.

*Steve Clark*, Att'y Gen., by: *Kelly A. Procter*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. Appellant was convicted of first degree murder and sentenced to life. In his appeal, he raises three points for reversal. We find no merit in his arguments, and therefore affirm.

We first consider appellant's argument that the statement he gave law authorities on April 26, 1988, should have been suppressed because, at the time he gave it, he was illegally detained without probable cause. We disagree.

■■ Probable cause exists where there is a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man to believe that a crime has been committed by the person suspected. *Addison* v. *State*, 298 Ark. 1, 765 S.W.2d 566 (1989). Probable cause to arrest without a warrant does not require the quantum of proof necessary to sustain a conviction. *Id*. In viewing probable cause in *Addison*, we stated the following:

> The determination of probable cause is based upon factual and practical considerations of everyday life upon which ordinary men, not legal technicians, act. A nontechnical approach correctly balances the competing interests of the individual and society, so that law enforcement officers will not be hampered, nor law abiding citizens left to the mercy of over-zealous officers. In making the determination of probable cause, we are liberal rather than strict.

Appellant had been working for Ann Wilkins in her dog kennels when Ms. Wilkins, a Mena resident, was found in the kennels beaten and in a comotose state at about 11:00 a.m. on April 18, 1988. She died as a result of the beating. Tony Nedwick, Wilkins's boarder, conveyed to the authorities that appellant worked mornings and would drive his vehicle, which had a loud muffler, to the kennels at 7:30 a.m. Appellant usually left work at around 10:30 a.m., and Nedwick would generally see Wilkins afterwards. On the morning of April 18th, at about 9:00, Nedwick heard, but did not see, a loud vehicle which he believed was appellant's. Later, he also heard the vehicle leave. Nedwick went to inspect when he did not see Ms. Wilkins at the usual time that morning. That was when he found Wilkins. On the same morning at around 10:00, appellant had been seen in his car leaving Mena. In addition, during their investigations, law enforcement officers determined that Ms. Wilkins had experienced problems with the appellant coming to work late and that the appellant had been convicted for previous assaults on women.

■ On April 24, 1988, appellant returned to Mena, and learned the police wanted to talk to him. He voluntarily went to the sheriff's office the next day. At this time, no warrant had been issued for appellant's arrest. On April 25, appellant was ques-

tioned by officers, and he agreed to take a polygraph test in Ft. Smith. However, upon arriving in Ft. Smith, he and his accompanying authorities learned the polygraph equipment was in disrepair. When they returned to Mena, appellant left the sheriff's office after being told to come back the next day for a return trip to Ft. Smith. Appellant returned on April 26th, went to Ft. Smith and in his own terms, "took the polygraph test voluntarily because I knew I didn't have to." On the April 26th trip, appellant rode with Officer Welch only. After taking the test and when returning to Mena, appellant, crying, told Welch that he would like to tell the whole story and get it off his conscience. Appellant asked that the prosecutor or his deputy, Mr. Black, be present. Black was available when Welch and appellant returned to Mena. Unquestionably, at this point, probable cause existed to detain the appellant. Appellant was then read his Miranda rights, and he proceeded to give his statement, which reflected the fact that he had struck Ms. Wilkins in the head with a hammer several times after he had reported to work on the morning of April 18th.

Appellant next argues that the trial court erred in denying his motion for the disqualification of the prosecuting attorney from participating in the hearing held to suppress appellant's statement. Appellant contends that the prosecutor was a material witness and for that reason should have been disqualified.

On April 25th, the day appellant first volunteered to talk with the law officers, the prosecutor was at the courthouse on other business but stopped for a few minutes to see the appellant because he knew the appellant—he had prosecuted appellant on an earlier felony offense. Although the prosecutor did not participate in questioning the appellant, he told appellant that it would make appellant feel better if he told everything he knew about Ms. Wilkins's situation. As appellant put it, "[the prosecutor] wanted me to tell everything that I knew to clear the air." "The prosecutor," appellant said, "asked me if I would be willing to take a polygraph test."

The court has held that when a prosecutor undertakes an active role in the investigation of a crime to the extent that he becomes potentially a material witness for either the state or the defense, he can no longer serve as an advocate for the state in that case. *Scherrer* v. *State*, 294 Ark. 227, 742 S.W.2d 877 (1988);

*Duncan* v. *State*, 291 Ark. 521, 726 S.W.2d 653 (1987). However, we have also held that the rule against a prosecuting attorney acting both as an advocate and a witness was not designed to permit defense counsel to call the prosecuting attorney as a witness and thereby disqualify him as the state's advocate. *See Gardner* v. *State*, 263 Ark. 739, 569 S.W.2d 74 (1978). Here, the prosecutor did not take an active part in investigating the crime or in interrogating the appellant. Appellant even conceded the prosecutor never ordered him to take a polygraph test and admitted he knew it was purely voluntary on his part to do so. The prosecutor's testimony regarding any of these matters was simply unnecessary. Appellant also claims the prosecutor was a material witness in view of an alleged conversation which took place between appellant and the officer during their return trip from Ft. Smith on April 26. Appellant claims Welch said that he had talked with the prosecutor about making a "deal" with appellant. Welch denied making any such statement. Obviously, such a conflict in testimony concerns a credibility issue which is one for the trial court to resolve. *See Stone* v. *State*, 290 Ark. 204, 718 S.W.2d 102 (1986).

Finally, appellant asserts certain photographs were erroneously admitted into evidence. He contends the photographs were irrelevant, inflammatory and prejudicial.

The trial court allowed eight of fifteen photographs that were offered by the state. Some of the pictures are gruesome and can be depicted as inflammatory, but even inflammatory photographs may be admitted if they tend to shed light on any issue or if they are useful in assisting the jury in understanding testimony. *Gardner* v. *State*, 296 Ark. 41, 754 S.W.2d 518 (1988). Furthermore, photographs are admissible if they tend to corroborate the testimony of a witness, show the nature and extent of wounds or the savagery of an attack, or are useful to enable a witness to better describe objects portrayed. *Davis* v. *State*, 246 Ark. 838, 440 S.W.2d 344 (1969). The photos reflected the force of attack on Ms. Wilkins and the location of the wounds to her head. Importantly, the medical examiner used the photographs to identify the holes or wounds to the victim's head in order to match those wounds to a hammer found at the crime scene. The officers believed the hammer was used to bludgeon Ms. Wilkins to death. Appellant further argues that the photos were

unnecessary because he had informed the trial court that he would not contest the nature or cause of Wilkins's death. Of course, it is well settled that a defendant, in a criminal trial, cannot prevent the introduction of relevant evidence by stipulating to the fact which such evidence tends to prove. *David* v. *State*, 286 Ark. 205, 691 S.W.2d 133 (1978).

In accordance with Ark. Sup. Ct. R. 11(f), we have reviewed the record for all objections decided adversely to the appellant and have found no reversible error. For the foregoing reasons, we affirm.