Lisa K. BENNETT *v.* STATE of Arkansas

CR 00-1399 44 S.W.3d 310

Supreme Court of Arkansas
Opinion delivered May 24, 2001

*Jim Petty* and *Patrick J. Benca*, for appellant.

*Mark Pryor*, Att'y Gen., by: *David R. Raupp*, Sr. Ass't Att'y Gen., for appellee.

TOM GLAZE, Justice. This case concerns the Fourth Amendment and specifically whether an officer's smelling of a legal substance is sufficient in itself to show probable cause for a search warrant or to justify a good-faith exception for a warrant's issuance. Appellant Lisa Bennett brings this appeal after entering her conditional plea of guilty to a reduced charge of attempt to manufacture a controlled substance.

The search at issue ensued on October 28, 1998. At 1:30 a.m., Bradford Police Officer Steve Strayhorn was driving along State Highway 367 in White County when he passed a storage building and smelled a strong chemical odor emitting from the building. Strayhorn contacted State Police Investigator Roger Ahlf and Drug Task Force Investigator Robert Parsons, who both arrived on the scene about 3:00 a.m. Ahlf determined the smell was denatured

alcohol, a legal substance, which he described as "extremely strong and in an unstable condition." The officers contacted the building's owner, Nathan Bennett, who said that his daughter, Lisa Bennett, had items stored in the building, and she would have to consent to any search. Lisa was contacted and showed up at the building, but she refused the officers' request to search.[1]

Investigator Ahlf then went to Searcy to prepare a warrant, while other officers secured the Bennetts' building. When Ahlf returned to the building at 4:30 a.m., Lisa again refused entrance. Ahlf then swore out an affidavit for a search warrant, and appeared before Searcy Municipal Judge Leroy Froman, who found probable cause for the issuance of a warrant. The officers executed the search warrant at about 7:30 a.m.; the search turned up a number of items that could be used in the manufacturing of methamphetamine. Lisa was subsequently arrested.

After being charged, Lisa moved to suppress the evidence seized from the building, arguing that the smell of the legal substance of denatured alcohol, by itself, was insufficient to support Municipal Judge Froman's finding of probable cause. At a hearing before the circuit court, the court agreed with that part of Lisa's argument that probable cause had not been shown, but even so, the court held the search was valid under the good-faith exception established in *United States v. Leon*, 468 U.S. 897 (1984). There, the Supreme Court held the Fourth Amendment exclusionary rule should not be applied so as to bar the use in the prosecutor's case in chief of evidence obtained by officers who had acted in reasonable reliance on a search warrant issued by a detached and neutral magistrate, but ultimately found to be invalid. In short, the circuit court applied the *Leon* rationale in the instant case and ruled that it was reasonable for Investigator Ahlf to have concluded that Judge Froman's warrant was valid, and that Ahlf was acting in good faith when he conducted the search of the Bennetts' building.

Before addressing the circuit court's *Leon* ruling and Lisa Bennett's contention that the lower court erred in applying that ruling, we take up the State's argument that the circuit court was wrong to suggest probable cause was not shown; in fact, the State submits that

---

[1] At oral arguments, the State attempted to argue that Bennett's refusal to consent to the search of her property somehow contributed to Investigator Ahlf's determination that probable cause existed. However, the State conceded that it had no authority to support this contention.

probable cause did exist to support Ahlf's search warrant. The State's argument is without merit.

Both the State and Lisa Bennett cite the singular case of *United States v. Tate*, 694 F.2d 1217 (9th Cir. 1982) (*Tate I*), where a search warrant was obtained on the basis of the smell of a noncontraband or legal substance, ether. The *Tate I* court held that the smell of a legal or noncontraband substance, standing alone, did not establish probable cause to search a residence. However, the government in *Tate I* challenged that decision and petitioned the Supreme Court for a writ of certiorari. While the government's petition was pending, the Supreme Court decided *Leon*, and, as a consequence, it vacated *Tate I* and remanded the case to the Ninth Circuit so that court could reconsider *Tate* in light of the *Leon* decision. *United States v. Tate*, 468 U.S. 1206 (1984). On remand, the Ninth Circuit adhered to its earlier decision, holding that no probable cause was established to support the search of Tate's residence, but it then applied the Supreme Court's rule in *Leon*; in doing so, the Ninth Circuit held that all of the evidence seized by the government was admissible under *Leon's* good-faith exception. *See United States v. Tate*, 795 F.2d 1487 (1986) (*Tate II*).

While the State appears to disagree with the circuit court's ruling here, which, as in the *Tate* cases, held probable cause could not be established by an officer's smell of a legal substance itself, it has done little to show that ruling to be erroneous. The State cites only four cases in response, and those cases all concern warrants issued to officers who had smelled *unlawful* substances. *United States v. Ventresca*, 380 U.S. 102 (1965) (affidavit for warrant showed probable cause where, among other things, federal officers of Alcohol and Tobacco Division of the Internal Revenue Service investigating an illegal distillery smelled odor of fermenting mash); *Johnson v. United States*, 333 U.S. 10 (1948) (search warrant justified based on qualified officers who smelled the forbidden substance of burning opium coming from a hotel room); *People v. Benjamin*, 91 Cal. Rptr. 2d 520 (Cal. App. 1999) (odors may constitute probable cause if the magistrate finds the affiant qualified to know the odor — here, marijuana — and it is one sufficiently distinctive to identify a forbidden substance). The fourth case cited by the State is *Lowery v. State*, 843 S.W.2d 136 (Tex. Ct. App. 1992) which contained a statement that ether can provide an element of probable cause for a search, but the Texas court's opinion also mentioned an officer "smelled a meth lab near the residence in question." The *Lowery* court also concluded no probable cause was shown because the

odors related to drug manufacturing did not emanate from the residence. *Id.* at 141.

 Our court applies the totality of the circumstances analysis when determining whether the issuing magistrate had a substantial basis for concluding that probable cause existed. *Fouse v. State*, 337 Ark. 13, 989 S.W.2d 146 (1999) (citing *Langford v. State*, 332 Ark. 54, 962 S.W.2d 358 (1998)). This court has held probable cause exists where there is a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man to believe that a crime has been committed by the person suspected. *Smith v. State*, 343 Ark. 552, 39 S.W.3d 739 (2001); *Williams v. State*, 300 Ark. 84, 776 S.W.2d 359 (1989). In viewing probable cause, our court has stated the following:

> The determination of probable cause is based upon factual and practical considerations of everyday life upon which ordinary men, not legal technicians, act. A nontechnical approach correctly balances the competing interests of the individual and society, so that law enforcement officers will not be hampered, nor law abiding citizens left to the mercy of over-zealous officers. In making the determination of probable cause, we are liberal rather than strict.

*Williams*, 300 Ark. at 86 (quoting *Addison v. State*, 298 Ark. 1, 765 S.W.2d 566 (1989)).

 As already noted, the State has not furnished us with any precedent which has sanctioned the issuance of a search warrant based solely on a trained officer's smell of a legal substance, when that substance has legitimate uses, but also might be used to make an illegal substance. Here, the State is forced to concede that the denatured alcohol Officer Strayhorn and Investigators Ahlf and Parsons smelled had other legal uses. As pointed out by Lisa Bennett, to uphold the search in the circumstances of this case would open the door to the issuance of search warrants based simply on an officer's smell of a noncontraband substance. For example, a business and building where denatured alcohol is kept to strip or refinish furniture could be subject to search. Certainly, the circumstance of smelling denatured alcohol, without other factors, would not cause a cautious man to believe a crime has been committed, nor should the mere storage of denatured alcohol subject a law abiding citizen to the mercy of an over-zealous officer. Once again, the only evidence presented here was that officers smelled unstable denatured alcohol, and that the smell lingered during a three-hour period before the officers sought a warrant.

■ Finally, because we agree with the circuit court's ruling that the smell of denatured alcohol alone was insufficient to support a finding of probable cause, we now must consider and decide whether the lower court was correct to determine that the evidence seized as a result of the search can still be admissible under the good-faith exception established in *Leon*. The Court in *Leon* wrote that "[i]f the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence should be suppressed only if it can be said that the law-enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." 468 U.S. at 919. In this respect, the evidence may only be excluded if the officer was not acting reasonably and with objective good faith.

■ This court has on several occasions discussed the four errors, noted in *Leon*, which an officer's objective good faith cannot cure. These errors occur (1) when the magistrate is misled by information the affiant knew was false; (2) if the magistrate wholly abandons his detached and neutral judicial role; (3) when the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when a warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid. *Leon*, 468 U.S. at 914-15; *see also Herrington v. State*, 287 Ark. 228, 697 S.W.2d 899 (1985); *Collins v. State*, 280 Ark. 453, 658 S.W.2d 877 (1983); *Ulrich v. State*, 19 Ark. App. 62, 716 S.W.2d 777 (1986). In the instant case, we are concerned only with the third of these errors; therefore, we must determine whether the affidavit supporting the search warrant was so lacking in indicia of probable cause that it was unreasonable for the executing officers to rely on it. We conclude that this affidavit was so lacking.

■ In *Herrington, supra*, this court held that sufficient information must be presented to the magistrate to allow that official to ascertain probable cause; his action cannot be a mere ratification of the bare conclusions of another. *Herrington*, 287 Ark. at 233 (quoting *Illinois v. Gates*, 462 U.S. 213 (1983)); *see also Collins, supra* ("bare, conclusory statements are . . . insufficient"); *Nathanson v. United States*, 290 U.S. 41 (1933) ("[A]n officer may not properly issue a warrant to search a private dwelling unless he can find probable cause therefor from facts or circumstances presented to him under oath or affirmation. Mere affirmance of belief or suspicion is not enough.").

■ ■ Here, Investigator Ahlf prepared his affidavit for search warrant based solely on the smell of denatured alcohol. The remaining "facts" asserted in his affidavit are no more than bare, conclusory statements with no support to be drawn from the surrounding circumstances. For example, the warrant noted Investigator Ahlf's assertion that he "had reason to believe" that Lisa Bennett's storage shed contained items such as records of drug sales, methamphetamine recipes, scales, plastic bags, syringes, pipes, anhydrous ammonia, sulfuric acid, and other such items. However, the State conceded at oral argument that none of those other items were apparent to Investigator Ahlf at the time he obtained the search warrant. Because probable cause for a search warrant *must exist at the time the warrant is issued*, *Gilbert v. State*, 341 Ark. 601, 19 S.W.3d 595 (2000) (emphasis added), we hold that a warrant based on nothing more than the smell of a legal substance presented Ahlf with no reasonable grounds for believing the warrant was properly issued. We point out that, even in *Tate II*, where the Ninth Circuit accepted a good-faith argument when the warrant was initially based on the smell of ether, there were other circumstances which would have lent support to the investigator's conclusion that drugs were being manufactured on the premises.[2] Here, however, there was only the smell of a legal substance. There was no additional evidence to support a conclusion that drugs were being or would be manufactured. As the Court noted in *Leon*, "it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued." 468 U.S. at 922. This case presents exactly those circumstances, and the trial court's determination that the good-faith exception applied was clearly against the preponderance of the evidence.

Bennett also raised a second point on appeal, namely, that the officer's refusal to let her or her father enter the storage building until Investigator Ahlf could obtain a search warrant amounted to an unlawful seizure. However, in light of the fact that this case must be reversed, we need not reach this second issue.

For the foregoing reasons, Bennett's motion to suppress should have been granted, and we hereby reverse and remand for entry of an order consistent with this opinion.

---

[2] For example, the police had conducted extensive surveillance on the property, the defendants involved had been engaged in suspicious activity, and the police had received several anonymous phone calls about the situation.